**[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 408.]**

THE STATE EX REL. SMITH, APPELLANT, *v*. SUPERIOR'S BRAND MEATS, INC. ET AL., APPELLEES.

[Cite as *State ex rel. Smith v. Superior's Brand Meats, Inc.*, 1996-Ohio-166.]

*Workers' compensation—Application for temporary total disability compensation—Industrial Commission does not abuse its discretion when determining that claimant's departure from his former position of employment was "voluntary" and abandonment barred temporary total disability compensation.*

(No. 94-1758—Submitted May 7, 1996—Decided August 21, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD04-534.

_____

{¶ 1} Appellant-claimant, Cornelius W. Smith, was injured in the course of and arising from his employment with appellee Superior's Brand Meats, Inc. His workers' compensation claim was later allowed by appellee Industrial Commission of Ohio.

{¶ 2} In 1983, Superior's suspected that claimant had been falsifying his time cards. In a meeting attended by claimant, his union representative, and a Superior's supervisor, claimant could not explain the irregularities. Unsatisfied with claimant's response, Superior's told claimant that his employment would be terminated. Given the option of being fired or resigning, claimant, after consulting with his union representative, chose the latter.

{¶ 3} Claimant secured other work. (*Id*. 19-20) In 1988, he applied for temporary total disability compensation from December 21, 1987 through April 3, 1988. A district hearing officer denied temporary total disability compensation, writing:

"This Hearing Officer finds that the claimant resigned [from] his former position of employment on June 7, 1983, for reasons totally unrelated to his industrial injury. Per the testimony at hearing, the claimant was not treating with his physician on or around June 7, 1983. There was no evidence presented by the claimant that supported any disability due to his injury affecting his ability to perform his former position of employment, other than the claimant's statement that he was on light duty on June 7, 1983. There was no evidence from the claimant that his physician recommended that he resign his former position of employment due to his injury.

"The claimant did allege, at hearing, that his resignation was not 'voluntary' regardless of the fact the [*sic*] he signed a statement indicating his resignation was 'voluntary.' Per the claimant, he had the choice to resign or be terminated. The claimant made no allegation that the threatened termination was in any way related to his industrial injury. While the claimant alleges duress and that his separation from his employment was wrongful, no proof that a formal grievance was filed or processed was proffered by the claimant.

"While the claimant's resignation may not have been totally 'voluntary' from the claimant's perspective in that, for reasons totally unrelated to his industrial injury, the employer gave the claimant the choice to either resign or to be fired. For purposes of Workers' Compensation, this Hearing Officer finds that claimant's resignation was 'voluntary' in that the alleged disciplinary factors precipitating claimant's choice were totally unrelated to claimant's industrial injury. When the claimant signed his 'voluntary resignation' statement, the claimant was aware that he was abandoning his former position of employment, thus preventing him from ever having his former position of employment to which he could return.

"Based on the above, this Hearing Officer finds the claimant voluntarily resigned, and abandoned his former position of employment. Therefore, it is ordered that payment of temporary total compensation from December 21, 1987

through April 3, 1988, inclusive, and from February 3, 1989 through March 12, 1989, inclusive, is specifically disallowed." The order was administratively affirmed.

{¶ 4} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in defining his departure as "voluntary." The court of appeals denied the writ. This cause is now before this court upon an appeal as of right.

_____

*Brian & Brian* and *Richard F. Brian*, for appellant.

*Buckingham, Doolittle & Burroughs*, *Brett L. Miller* and *Eleanor J. Tschugunov*, for appellee Superior's Brand Meats, Inc.

*Betty D. Montgomery*, Attorney General, and *Charles Zamora*, Assistant Attorney General, for appellee Industrial Commission.

_____

***Per Curiam.***

{¶ 5} This controversy presents another variation on a recurrent theme--a claimant's eligibility for temporary total disability compensation when claimant no longer works at the job at which he or she was hurt. The relevance of employment separation to temporary total disability compensation eligibility has its roots in *State ex rel. Ramirez v. Indus. Comm*. (1982), 69 Ohio St. 2d 630, 23 O.O.3d 518, 433 N.E.2d 586, syllabus, which defined 'temporary total disability' as "a disability which *prevents* a worker from returning to his former position of employment." (Emphasis added.) This description prompted the later declaration that an industrial injury "must not only be such as to render the claimant unable to perform the functions of his former position of employment, but it also must prevent him from returning to that position." *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.* (1985), 29 Ohio App. 3d 145, 147, 29 OBR 162, 163, 504 N.E.2d 451, 453. *Jones & Laughlin* accordingly held:

"A worker is prevented by an industrial injury from returning to his former position of employment where, but for the industrial injury, he would return to such former position of employment. However, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability benefits since it is his own action, rather than the industrial injury, which prevents his returning to such former position of employment. Such action would include such situations as the acceptance of another position, as well as voluntary retirement." *Id*. at 147, 29 OBR at 164, 504 N.E.2d at 454.

{¶ 6} *Jones & Laughlin* was approved in *State ex rel. Ashcraft v. Indus. Comm*. (1987), 34 Ohio St.3d 42, 44, 517 NE 2d 533, 535, which stated:

"The crux of this decision [*Jones & Laughlin*] was the court's recognition of the two-part test to determine whether an injury qualified for temporary total disability compensation. The first part of this test focuses upon the disabling aspects of the injury, whereas the latter part determines if there are any factors, other than the injury, which would prevent the claimant from returning to his former position. The secondary consideration is a reflection of the underlying purpose of temporary total compensation: to compensate an injured employee for the loss of earnings which he incurs while the injury heals."

{¶ 7} *State ex rel. Rockwell Internatl. v. Indus. Comm*. (1988), 40 Ohio St.3d 44, 531 N.E. 2d 678, clarified that only voluntary abandonment barred temporary total disability compensation. The nature of departure has remained the pivotal question since then.

{¶ 8} Delineating between voluntary and involuntary can be confusing since the natural inclination to characterize departure by the party who initiated it does not always work. For example, an employee-initiated separation is considered involuntary if the decision to leave was injury-induced. *Rockwell*. Conversely, an employer may fire a claimant, yet successfully assert a voluntary departure under

the theory that the termination resulted from misconduct that the claimant voluntarily undertook. *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 623 N.E. 2d 1202.

{¶ 9} Claimant argues that his departure was employer-induced and hence involuntary. He asserts that the misconduct which the commission found transformed the separation into a voluntary one was never proven. As such, it could not have formed the basis for claimant's departure. We disagree. At the outset, we recognize the great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation. We therefore find it imperative to carefully examine the totality of the circumstances when such a situation exists.

{¶ 10} In this case, the commission suggests that the nature of the offense and claimant's actions corroborated the accusation of wrongdoing. The incident giving rise to claimant's resignation was not an isolated one. Instead, it was part of a documented pattern of irregularity in claimant's time cards. Claimant never denied that his cards had been falsified. He apparently denied to the employer that he did it, but could offer no credible alternative explanation for the repeated irregularities. Claimant also never seriously challenged the grounds for his termination which, as a union member, he could have done through the grievance process. While claimant alleges that he completed a grievance form, he did not produce any record of that document, had no knowledge if the grievance procedure was ever commenced, and admitted that he never pursued the matter further. Viewed cumulatively, this constitutes "some evidence" upon which the commission could conclude that the claimant committed the misconduct alleged, despite the lack of a formal adjudication thereof. We therefore find no abuse of discretion in the commission's determining that claimant's departure was "voluntary" and that this abandonment barred temporary total disability compensation.

**{¶ 11}** Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

DOUGLAS and RESNICK, JJ., concur in judgment only.

———————————

**DOUGLAS, J., concurring in judgment only.**

**{¶ 12}** I concur in the judgment of the majority. I write separately only to point out that the majority's citation to *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 623 N.E.2d 1202, does not support the proposition for which *Schottenstein* is cited. Specifically, the majority says that, "[c]onversely, an employer may fire a claimant, yet successfully assert a voluntary departure under the theory that the termination resulted from misconduct that the claimant voluntarily undertook. *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 623 N.E.2d 1202." However, *Schottenstein* is a case involving R.C. 4123.56(B) wage loss compensation, and firing has no bearing on a determination of wage loss eligibility. See *State ex rel. McGonegle v. Indus. Comm.* (1996), 76 Ohio St.3d 272, 667 N.E.2d 392.

RESNICK, J., concurs in the foregoing concurring opinion.

———————————