DECISION
{¶ 1} Aldo Jeany filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its orders denying him permanent total disability ("PTD") compensation and which compels the commission to enter a new order granting the compensation.
 {¶ 2} In accord with Loc.R. 12(M), the case was referred to a magistrate to conduct appropriate proceedings. (Attached as Appendix A.) The parties stipulated the pertinent evidence and filed briefs. The magistrate issued a magistrate's decision and a corrected magistrate's decision which both recommend that we deny relief.
 {¶ 3} Counsel for Mr. Jeany has filed objections to the magistrate's decision. Counsel for the commission has filed a memorandum in response. The case is now before the court for a full, independent review following oral argument by the parties.
 {¶ 4} In 1956, Mr. Jeany injured his back at work. Despite his injury, he continued to work at his trade as a cement mason until November 1983. He stopped working on his 64th birthday. He began receiving pension benefits and Social Security.
 {¶ 5} In 1985, Mr. Jeany was diagnosed as suffering from knee problems resulting from his many years of working on his knees while finishing cement. His workers' compensation claim was eventually expanded to include bilateral peroneal nerve palsy.
 {¶ 6} In 1993, Mr. Jeany applied for permanent partial disability based upon impaired earning capacity. He was denied an award based upon a finding that he voluntarily retired and a finding that he could return to his former occupation as a cement mason.
 {¶ 7} In 1996, Mr. Jeany applied for permanent total disability ("PTD") compensation. His application was denied based upon a finding that Mr. Jeany had voluntarily retired, as determined in the earlier proceedings. The staff hearing officer who considered the application on its merits expressly rejected an argument that a prior stipulation in the lawsuit which resulted in the recognition of the peroneal nerve palsy was binding on the parties on the issue of PTD compensation. That stipulation was to the effect that Mr. Jeany's departure from employment had not been voluntary, but had resulted from his back and knee problems.
 {¶ 8} The central issue before us is whether the commission somehow made a mistake in its findings with respect to Mr. Jeany's departure from employment. We cannot find that the commission erred.
 {¶ 9} The commission had a valid basis for determining that Mr. Jeany voluntarily retired, whether or not he could realistically have been expected to be able to return to the job of cement mason at age 74, as found by an SHO in 1994. Certainly, 64 is a common age for people to retire in our culture. Also, 64 is an age at which many in the construction trade may want to leave the heavy physical demands of construction work, not to mention the adverse Ohio weather for work outdoors. Some evidence clearly supported the commission's finding.
 {¶ 10} We also are unwilling to force stipulations made in a separate lawsuit upon similar parties in subsequent litigation. Simplifying litigation for purposes of narrowing the scope of the litigation is a practical necessity and should not be thwarted by fears that the stipulations are going to be binding for all later litigation.
 {¶ 11} With those comments, we overrule the objections to the magistrate's decision. We adopt the findings of fact and conclusions of law contained in the magistrate's decision and deny the request for a writ of mandamus.
Objections overruled; writ denied.
BRYANT and PETREE, JJ., concur.
 APPENDIX A IN MANDAMUS {¶ 12} Relator, Aldo Jeany, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio to vacate its orders denying compensation for permanent total disability ("PTD") and to issue an order that grants the requested compensation or that is consistent with Ohio law. [This corrected decision includes one correction, to paragraph 30, in which a word was omitted.] Findings of Fact:
 {¶ 13} In April 1956, Aldo Jeany ("claimant") sustained a back injury when he was 34 years old, and his workers' compensation claim was allowed for a low back strain and degenerative joint disease of the low back. He returned to work as a cement mason, which was classified as heavy work of a skilled nature, and he continued in that trade for more than 25 years. This work often required him to work on his knees finishing cement. Claimant supervised others, overseeing 10 to 15 people, depending on the job.
 {¶ 14} Claimant's last day of work was November 4, 1983, his 64th birthday, according to his PTD application filed in 2000.
 {¶ 15} Beginning in 1983, claimant received pension benefits from his union and retirement benefits from Social Security.
 {¶ 16} In July 1984, claimant was examined by Jerry McCloud, M.D., who found no radicular or neurological problem but found limited lumbar function and reserve. Dr. McCloud assessed 40% impairment of the body as a whole from the allowed back conditions.
 {¶ 17} Following retirement from the cement trade in 1983, claimant filed a workers' compensation claim for a knee condition that was diagnosed on November 19, 1985.
 {¶ 18} The commission denied the claim, and claimant appealed to the common pleas court. The common pleas court concluded that the claim was not time-barred, a conclusion affirmed by this court in 1989.
 {¶ 19} The claim was ultimately allowed for bilateral peroneal nerve palsy.
 {¶ 20} In September 1993, claimant filed a request for permanent partial disability compensation based on impairment of earning capacity ("IEC") caused by his allowed conditions, under former R.C.4123.57(A). Compensation based on IEC was denied:
 * * * Claimant's request to receive compensation based upon his impairment of earning capacity is denied. The District Hearing Officer finds that the claimant has failed to satisfy his burden of providing evidence probative on the issue of claimant's post-injury earning capacity. The District Hearing Officer finds that there is no evidence on file which demonstrates that the claimant's industrial injury precludes him from engaging in employment for which he is academically or vocationally qualified. The District Hearing Officer concludes, therefore, that the claimant has not proven an impairment of his earning capacity. * * *
 {¶ 21} A staff hearing officer affirmed:
 * * * The claimant retired on Social Security Retirement in 1983, after 45 years as a cement finisher. His retirement was two years prior to the 1985 date of diagnosis in this claim. There is no persuasive evidence on file to support a conclusion that the claimant did not voluntarily retire in 1983. Likewise, the claimant has offered no persuasive evidence to support his current contention in 1994 that he did not voluntarily decide to remove himself from the work force in 1983, after 45 years of work and at the age of 63 at that time. The claimant testified at hearing that his Social Security Retirement and Union pension pay him approximately $800.00 (gross amount) which is approximately what he would net at his Average Weekly Wage in this claim.
 Finally, there is no persuasive evidence in file that would establish that the claimant is prevented by his industrial disease from returning to his former position of employment as a cement finisher, which he performed for 45 years before retiring in 1983, two years prior to his 1985 date of diagnosis in this claim.
Further appeal was refused.
 {¶ 22} In July 1996, claimant filed a PTD application, stating he had completed the 11th grade and could read and write but could not perform basic math "well." A variety of evidence was filed including medical reports from Ralph Newman, D.O. (opining that claimant was permanently and totally disabled), and Kottil Rammohan, M.D. (finding claimant capable of "light type occupations," lifting up to 20 pounds occasionally, unrestricted pushing and pulling of up to 20 pounds, unrestricted sitting, standing up to five hours per day, walking and climbing stairs occasionally, etc). Vocational reports were also submitted.
 {¶ 23} In December 1996, claimant was examined by Edmond Goold, M.D., a psychiatrist who found that claimant had a depressive disorder due to his 1985 diagnosis.
 {¶ 24} In January 1997, a PTD hearing was held. A transcript of the hearing was filed, and the commission denied PTD compensation as follows:
 * * * In the instant case, a prior Staff Hearing Officer order of 10/11/1994 made a finding that the claimant took a voluntary retirement in 1983 after 45 years of work as a cement finisher, but two years prior to the 1985 date of diagnosis in this claim. In support of this finding that Hearing Officer further noted that claimant retired on Social Security Retirement in 1983 at the age of 63 and that claimant applied for and received Union Pension Benefits as well. This prior Staff Hearing Officer order is all the more persuasive when considering the recent Industrial Commission Specialist report from Dr. Kottil W. Rammohan, M.D., a Neurologist. In his report, * * * Dr. Rammohan opines that claimant currently sustains a 31% impairment due to his allowed condition(s) and that claimant retains the residual capacity to perform "a variety of light type occupations."
 Considering that claimant is 77 years old and last worked in 1983 at the age of 63, this medical opinion is particularly relevant in that claimant has had, and continues to have, the physical capacity to remain employed over the preceding 13 year period if it was his sincere intent to extend/prolong his 45 year work history. The aforenoted prior Staff Hearing Officer order of 10/11/1994 was appealed by claimant, but the appeal was refused by the Commission per order of 11/03/1994. No further action on this matter was pursued by the claimant. Thus the Staff Hearing Officer order of 10/11/1994 is found to be res judicata on the finding of a voluntary retirement.
 This Hearing Officer notes a list of stipulations filed by claimant with the Franklin County Court of Common Pleas on 08/26/1988. One of the stipulations states that claimant's retirement was due to physical inability to perform his work due to the recognized file conditions. The Hearing Officer finds this evidence to be inapplicable to the case Sub Judice for the following reasons: The stipulations offered were for the specific purposes of a lawsuit claimant had filed in response to the Commission's denial of this claim (via the entire Administrative process) on the basis that claimant's original OD-1 Application was not timely filed. The document stating the stipulations indicates Prima Facie that the "following statements of fact are true FOR PURPOSES OF THIS LAW SUIT." (emphasis added) In the alternative, even if this statement cannot be limited to the narrow purpose/scope of that legal proceeding, it nonetheless is irrelevant to the present consideration of claimant's IC-2 application because the previously mentioned Staff Hearing Officer 10/11/1994 order is Res Judicata with respect to the issue of voluntary retirement. That Hearing Officer had before him for his consideration all pertinent information including the list of stipulations. His order was issued accordingly. Claimant appealed that order to the final administrative level and such appeal was refused by Commission order of 11/03/1994. Claimant saw fit to not pursue the matter any further. Pursuant to the Ohio Supreme Court decision in State ex rel. Crisp v. Industrial Commission (1992), 64 O.S.3rd 507, claimant is precluded from re-litigating that issue at this time.
 {¶ 25} In 1998, claimant underwent bilateral knee surgery.
{¶ 26} In April 1998, claimant filed a motion to allow the condition of depressive disorder in his 1985 claim.
 {¶ 27} In 1999, the additional condition of depressive disorder was allowed.
 {¶ 28} In May 1999, Dr. Goold opined that, taking into consideration claimant's age, level of education, and previous work experience, psychiatric disability of 25%, and "any physical disability" from the injury, claimant's psychiatric disability was "permanent."
 {¶ 29} In February 2000, a report was provided by Saleem Choudhry, M.D., who opined that claimant was permanently and totally disabled.
 {¶ 30} In May 2000, claimant was examined by Michael Murphy, Ph.D., who opined that the allowed psychological condition did not prevent claimant from returning to work as a cement mason or in any other employment.
 {¶ 31} In June 2000, claimant was examined by Timothy Fallon, M.D., who concluded that the knee condition would prevent claimant from returning to work as a cement mason, which required substantial kneeling. He found that claimant could engage in unrestricted sitting and could stand and walk for zero to three hours. He stated that claimant could do no lifting, but handling/grasping was unrestricted, as was reaching overhead and at waist level. Dr. Fallon opined that claimant could not perform sustained remunerative employment.
 {¶ 32} In July 2000, Michael Farrell, Ph.D., submitted a vocational report. He found claimant's age of 80 years would prohibit reemployment and that claimant's education was not competitive. He found that, although claimant had engaged in skilled employment for many years, those skills were not transferable outside the construction industry.
 {¶ 33} In September 2000, Molly Williams submitted a vocational report finding claimant permanently and totally disabled.
 {¶ 34} In September 2000, a PTD hearing was held before a staff hearing officer, who denied compensation as follows:
 * * * Bilateral peroneal nerve palsy; depressive disorder. * * * Injury to the back; degenerative joint disease of the lower back.
 * * * [T]he Application filed 03/20/2000, for Permanent and Total Disability Compensation, is denied.
 By order of October 11, 1994, the Staff Hearing Officer found that the claimant had voluntarily retired from the work force in 1983 at the age of 63. By order of January 21, 1997, the Staff Hearing Officer denied 1997 application to be awarded permanent total disability compensation on the ground that such compensation may not be paid in a case where the claimant had voluntarily retired and precluded his ability to return to the work force. In placing this order the Staff Hearing Officer considered and rejected claimant's argument that the stipulations of fact which were entered by the parties when the question of the original allowance of the occupational disease claim was litigated before the Court of Common Pleas precluded a finding that the claimant had voluntarily retired. At this hearing, the Staff Hearing Officer inquired of the claimant on what basis the matter could be reopened. Claimant appears to be arguing that the decisions of the prior two orders mentioned above are nullities because they are inconsistent with the stipulations entered before the Court of Common Pleas. The Staff Hearing Officer does not find the claimant's argument on this point to be well taken. As was previously found in the order of January 21, 1997, those stipulations were only entered for the purposes of that law suit. Additionally, the matter cannot be considered at this hearing absent the demonstration of one of the bases upon which continuing jurisdiction could be invoked. Claimant's argument that the finding that the claimant had voluntarily retired rises to the level of a mistake of law and that therefore the claimant's failure to attack either of the prior two orders which made this finding is without significance constitutes begging the question. Final orders have been entered on the specific question raised at the same level of the Industrial Commission in the past, and remain final. No showing has been ma[d]e of any obvious mistake or mistake of law. Consequently, this Staff Hearing Officer finds that the issue of claimant's voluntarily retirement constitutes a matter which has been decided and is not open for further consideration on a factual basis. Consequently, the Staff Hearing Officer finds that claimant's Application to be awarded Permanent and Total Disability Compensation must be denied on a finding that claimant has already been adjudicated to have voluntarily retired and abandoned the work force.
Conclusions of Law:
 {¶ 35} In this action, claimant argues that the commission abused its discretion in failing to award PTD compensation. In the brief filed on behalf of claimant, counsel states that the contention in mandamus is "that the Industrial Commission of Ohio did not properly evaluate the evidence which was submitted in support of the Relator's applications for permanent and total disability."
 {¶ 36} In claimant's brief, the section titled "Law and Argument" is, for the most part, a recitation of facts and evidence. Counsel reviews testimony at length and quotes from medical and vocational reports that supported a finding of PTD.
 {¶ 37} Claimant's legal argument consists primarily of conclusions. He asserts that it is "quite evident in reviewing this file, that the evidence supports the fact that the Relator is permanently and totally disabled," that the commission abused its discretion in finding that claimant voluntarily retired "contrary to sworn statements from the Relator as well as the evidence before the Industrial Commission," that claimant terminated his employment because he was physically unable to work as a cement mason on advice of his physician, that the 1988 stipulations in the common pleas court were binding on the commission in the PTD proceedings in 2000, that the uncontroverted medical evidence from all physicians was that claimant was "incapable of returning to his `former position of employment' because of his injuries," that the "evidence clearly indicates that the type of work he did was heavy cement finishing work, which required him to be bend [sic], stoop, lift and work on his knees," that the commission's finding that claimant voluntarily retired and abandoned his employment was "clearly contrary to the facts," and that claimant "clearly did not abandon his employment, as he was still a member of his union in good standing and could have returned to work if his health permitted."
 {¶ 38} In his conclusion, claimant states that the commission's finding that he voluntarily retired and abandoned his employment "is inaccurate" and that the evidence is "overwhelming" that he is permanently and totally disabled.
 {¶ 39} In his brief, however, claimant failed to address the basis of the commission's ruling, which was the doctrine of res judicata and lack of sufficient cause to exercise continuing jurisdiction. Similarly, in his brief, claimant did not address the commission's legal conclusion, set forth in its order, that the stipulation in the 1988 litigation was limited to use in those court proceedings only and did not bind the commission in any other proceeding. In his brief, claimant simply insists that the evidence in his favor is "overwhelming" and that the commission's findings were "contrary" to evidence, but the standard of review in mandamus is whether the commission's decision was supported by "some evidence" in the record. E.g., State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203. In mandamus, this court must uphold a commission order that is based on "some evidence" in the record, regardless of whether the record includes contrary evidence that isgreater in quantity and/or quality than the evidence on which the commission relied. See State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373, 376. Thus, claimant's arguments regarding the weight of the evidence, and his focus on the evidence in favor of claimant's PTD application, fail to address the crucial issue.
 {¶ 40} Further, in his reply brief, counsel largely ignores the arguments made by respondent in its brief. Counsel summarily asserts that it was "illegal" for the commission to refuse to apply the stipulation that it entered in the litigation in common pleas court and appears to assume that a party cannot expressly limit a stipulation to the current proceedings. Counsel cites no law for this proposition of law, however.
 {¶ 41} Counsel also asserts that collateral estoppel prohibited the commission from limiting a stipulation in the trial court. However, counsel cites no law to support that assertion.
 {¶ 42} In mandamus, relator has the burden of proof to demonstrate an abuse of discretion. Thus, in this action, the claimant was required to prove that the commission violated a clear legal duty in declining to grant PTD compensation and that claimant was deprived of a clear legal right. E.g., State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. Nonetheless, claimant has cited no law to support any of the legal propositions he asserts. For example, claimant cited no law relating to the limits of res judicata nor provided any explanation as to why an application of res judicata was an abuse of discretion in the present action.
 {¶ 43} Claimant has cited no authorities relating to the effect that a retirement may have on a claimant's eligibility for PTD compensation. In regard to retirement, claimant insists that the facts show he was forced to leave his strenuous cement-mason work due to his allowed conditions, as if that fact were dispositive as to PTD. However, even if a person can no longer do heavy work, he need not necessarily leave the labor force. Claimant fails to recognize the difference between an inability to keep working on his knees as a cement finisher and an inability to do any kind of work. Even if claimant established (via evidence or application of a stipulation) that he left cement-finishing work involuntarily, the question remained whether his departure from the work force as a whole in 1983 was voluntary. In short, claimant fails to recognize that, even when a claimant is forced to cease heavy employment due to an allowed condition, that does not automatically mean he was forced to cease all employment at that time. See, generally, See State ex rel. Baker Material Handling Corp v. Indus.Comm. (1994), 69 Ohio St.3d 202; State ex rel. McAtee v. Indus. Comm. (1996) 76 Ohio St.3d 648; State ex rel. Kinnear Div., Harsco Corp. v.Indus. Comm. (1997), 77 Ohio St.3d 258.
 {¶ 44} In his brief, claimant cites no law to support his propositions regarding the evaluation of evidence, the application of res judicata, the effect of stipulations in common pleas court, or the effect of retirement. Claimant cites no authority for his argument that the commission was required to accept the opinions forwarded by vocational consultants. Further, claimant provides little or no explanation, essentially repeating emphatic conclusions.
 {¶ 45} It has been said that the courts are not required to scour the record to find "some evidence" to support the commission's order. Noll. Likewise, the courts are not required to research and prove, or disprove, counsel's unsupported assertions of law. The magistrate concludes that relator has not met his burden of proof in mandamus and that this court should deny the requested writ.